UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MCCAFFREY,<br><br>    Plaintiff,<br><br>    v.<br><br>REPUBLIC SERVICES, INC.,<br><br>    Defendant. | Case No. 23-cv-06224-SI<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 33 |

Defendant filed a motion for summary judgment on all of the claims in this litigation and plaintiff's request for punitive damages. Dkt. No. 33. For the reasons stated below, the Court GRANTS in part and DENIES in part defendant's motion.

## BACKGROUND

### I.  Plaintiff's Job Performance and Defendant's Responses

Defendant Allied Waste Services of North America, LLC (named in the complaint and some documents as Republic Services, Inc.) hired plaintiff Stephen McCaffrey as a division manager for its Fresno/Salinas business unit in late 2017. Dkt. No. 33-2, Ex. A ("Pl. Dep.") at 23, 30-31.[1] In April 2020, plaintiff moved into the role of municipal sales manager because he was "exhausted" by seventy-five to ninety hour work weeks in the division manager role. *Id.* at 34-36. In this new position, plaintiff managed the company's contracts with various jurisdictions in the region. *Id.* at

---

[1] The parties attached overlapping and distinct portions of the following deponents' testimony to their briefs: plaintiff (Dkt. No. 33-2, Ex. A; Dkt. No. 34-1, Ex. A), Anthony Mann (Dkt. No. 33-2, Ex. B; Dkt. No. 34-1, Ex. B), Colin Wallace (Dkt. No. 33-2, Ex. C; Dkt. No. 34-1, Ex. C), Kevin DiVincenzo (Dkt. No. 33-2, Ex. D; Dkt. No. 34-1, Ex. D), and Christine Peterson (Dkt. No. 33-2, Ex. E; Dkt. No. 34-1, Ex. E).

37. He reported to the business unit's general manager and had a "dotted-line" relationship to Colin Wallace, a senior sales manager. *Id.*

The parties take starkly different views of plaintiff's job performance. From his hiring to his termination in June 2023, plaintiff worked under several different supervisors. In 2019, plaintiff's manager was Evan Boyd, who gave plaintiff an "Exceeds Expectations" rating in his 2019 annual performance review. Dkt. No. 34-2, Ex. A. Boyd commented in the review, "[Plaintiff] has successfully navigated some difficult political waters and has forged some very positive relationships with many elected officials and city staff." *Id.* Plaintiff's successive supervisors were general managers Luis Quinonez and Claudia Warkentin. Quinonez rated plaintiff's job performance as "Meets Expectations" in 2020 and 2021. Dkt. No. 34-2, Exs. B-C. Quinonez commended plaintiff's "extensive knowledge of the market, key stakeholders and potential pitfalls," but also noted that "his attitude needs to be kept in check as it can have a negative effect on the team." *Id.* Warkentin initially rated plaintiff as exceeding expectations in 2022, but another employee subsequently reduced the rating so that plaintiff would not be entitled to a raise.[2] Dkt. No. 34-2, Ex. D; Dkt. No. 34-4 ("Warkentin Decl.") ¶¶ 9-11.

Notwithstanding these reviews, defendant highlights several blemishes on plaintiff's employment record. Plaintiff was reprimanded for making inappropriate comments in front of subordinates on April 5, 2018. Pl. Dep., Ex. 11. In November 2022, Warkentin delivered a written warning to plaintiff for acting aggressively and unprofessionally with an employee on October 5, 2022. Pl. Dep., Ex. 9. Warkentin asserts that she did not believe the incident warranted a written warning, but she felt pressured to issue one by human resources director Christine Peterson. Warkentin Decl. ¶¶ 13-18. Plaintiff signed the warning letter on December 2, 2022 "under protest and with great sadness." Pl. Dep., Ex. 9.

By late 2022, Wallace and plaintiff were having conversations about "get[ting] [plaintiff] up to speed" on the shifting duties of his role, in particular in regard to new technology applications.

---

[2] Defendant objects to this statement by Warkentin and other statements attributed to its employees by plaintiff on the basis of hearsay. These objections are overruled. The statements are not hearsay under Federal Rule of Evidence 801(d)(2)(D).

1  Wallace Dep. at 157-58. Wallace found plaintiff's lack of progress in learning these programs
2  "problematic." *Id.* at 158. In early January 2023, plaintiff, Wallace, and area president Kevin
3  DiVincenzo met to discuss plaintiff's future with the company. The genesis of the meeting is
4  disputed. Plaintiff testified that DiVincenzo and Wallace proposed to meet with him. Pl. Dep. at
5  114. During the lunch meeting, they offered to attempt to transition plaintiff to a municipal
6  ambassador or liaison position as defendant had done with two of plaintiff's peers. *Id.* Plaintiff
7  expressed openness to the idea. *Id.* Wallace testified, however, that the meeting was a response to
8  plaintiff "raising his hand saying, you know, I think I'm done . . ." Wallace Dep. at 158. DiVincenzo
9  testified that he did not know whether Wallace or plaintiff initiated the meeting but that he
10 understood plaintiff "wanted to have a discussion about his career." DiVincenzo Dep. at 111.
11 DiVincenzo recalled plaintiff being "remorseful" that he could not fulfill certain job duties and that
12 Wallace had to step in frequently to help. *Id.* at 112. Due to these issues, plaintiff "discussed
13 potentially leaving the organization or finding another opportunity" within the company. *Id.* Area
14 vice president Anthony Mann, who started working at the company in December 2022, also testified
15 that plaintiff initiated the conversation about a job transition because he could not do the sales
16 manager role anymore. Mann Dep. at 12-13, 26.

17 Defendant later determined it did not have the budget to place plaintiff in a municipal liaison
18 role. Mann Dep. at 28; DiVincenzo Dep. at 115-16. After Warkentin gave plaintiff the favorable
19 performance review in February 2023, she left the company on April 14, 2023. Warkentin Decl.
20 ¶ 2. That same month, the company completed an additional performance review for plaintiff as
21 part of a "talent-calibration" process. Peterson Dep. at 44, Ex. 2. Peterson recommended that
22 plaintiff be placed in the "nine box," indicating the lowest rating for both the performance and
23 potential axes in the review rubric. Peterson Dep., Ex. 2; DiVincenzo Dep. at 108. When asked
24 whether anything specific occurred between February and May to change the company's assessment
25 of plaintiff's performance, Wallace replied that plaintiff's "behavior to both internal and external
26 stakeholders was becoming aggressive and inappropriate" and that plaintiff "butted heads" with city

staff. Wallace Dep. at 16-17.[3] Wallace also noted that plaintiff "struggled with written correspondence." *Id.* at 33-34. DiVincenzo and Wallace discussed plaintiff's performance in multiple one-on-one meetings. DiVincenzo Dep. at 34. DiVincenzo testified that "from an opinion-based perspective [plaintiff] struggled drastically" in responding constructively to city staff and displaying financial acumen. *Id.* at 109. According to plaintiff, Wallace and Mann called him in early May and indicated his last day with the company would be August 1, 2023. Pl. Dep. at 106-07. Wallace later clarified that they were not terminating plaintiff, but that they anticipated plaintiff would retire on that date. *Id.* at 108. Plaintiff communicated that he would not be retiring. *Id.* On May 9, Mann set up a meeting with Wallace and Peterson "to discuss [plaintiff's] response to stay aboard until August 1st," but Mann testified that retirement was not part of the conversation with plaintiff. Mann. Dep. at 33. At his deposition, Wallace likewise did not have any recollection of discussing plaintiff's retirement. Wallace Dep. at 167. Wallace also did not recall discussing placing plaintiff on a performance improvement plan at the meeting with Mann and Peterson on May 10, even though he testified that he had started drafting such a plan the month before. *Id.* at 170; Peterson Dep. at 125.

Countering defendant's narrative of plaintiff's poor job performance, plaintiff submitted additional evidence to the Court suggesting plaintiff performed well in certain aspects of his job. Scott Carrigan, the former Salinas city manager, praised plaintiff's professionalism and disagreed with any characterization that plaintiff "strained relations" or "butted heads" with city staff. Dkt. No. 34-3 ("Carrigan Decl.") ¶¶ 4-6. In plaintiff's deposition, he provided a long rebuttal to the concerns raised by his managers. Pl. Dep. at 88-101. Plaintiff asserted that all of his peers struggled with the Salesforce program.[4] *Id.* at 100-01. Plaintiff noted that he secured a 33% rate increase from the County of Fresno that Mann considered "masterful." *Id.* at 100. Plaintiff was also the company's primary representative at a Salinas City Council meeting on May 16, 2023 where the council approved a price increase for the company's contract. Mann Dep. at 19-20; Wallace Dep.

---

[3] Plaintiff's objection to this testimony as hearsay and lacking foundation is overruled.

[4] Wallace agreed that many struggled with fitting the program to the company's needs, but said that plaintiff struggled the most. Wallace Dep. at 98.

4

at 43-44.

The next morning, on May 17, 2023, defendant placed plaintiff on a forty-five day performance improvement plan. Pl. Dep., Ex. 10; Wallace Dep. at 104. The plan outlined examples of plaintiff's poor conduct in the areas of communication, ownership of contract negotiations, community engagement, and the use of Salesforce. Pl. Dep., Ex. 10. The plan required plaintiff to "develop" or "improve" skills in each area. *Id.* The plan promised weekly follow-up meetings, a formal review after thirty days, and a follow-up review after forty-five days. *Id.* Plaintiff, Wallace, and Mann signed the document. *Id.*

Defendant terminated plaintiff's employment on June 30, 2023, the forty-fifth day after the plan was instituted, without conducting any further review. Dkt. No. 33-1 ("Mot.") at 12; Dkt. No. 34 ("Opp'n") at 1; Wallace Dep. 107. The termination was a collective decision by Mann, Wallace, Peterson, and DiVincenzo. Mann. Dep. at 11-12. Defendant relies primarily on two incidents to justify plaintiff's noncompliance and resulting termination. Wallace Dep. at 100-03; Mann Dep. at 35. First, while the performance improvement plan was in place, plaintiff's supervisors learned about an incident that allegedly occurred in December 2022 between plaintiff and a delinquent customer. The customer complained to corporate leadership, who then asked area executives to investigate. Mann. Dep. at 55, 61. The employee who replaced plaintiff, Christina Urquidez, described the customer as someone who "will try to manipulate people in situations to get what he wants." Dkt. No. 34-1, Ex. F ("Urquidez Dep.") at 46. According to Peterson, plaintiff admitted in June to addressing the customer in an unprofessional manner in that December 2022 encounter.[5] Peterson Dep. at 134. In his deposition, plaintiff denied the incident occurred at all. Pl. Dep. at 147-48, 154-55.

The second incident occurred at a community clean up event on June 10, 2023. At the event, a business owner wanted the company's bins moved away from his business and plaintiff's coworker and a city staff representative agreed.[6] Mann Dep., Ex. 9. When plaintiff heard about this

---

[5] Plaintiff's objection to this evidence as hearsay and lacking foundation is overruled. The statement is non-hearsay as an opposing party's statement. Fed. R. Evid. 801(d)(2).

[6] According to plaintiff's deposition testimony, his coworker was upset about the change in

5

change, he interrupted a conversation between the city employee and the business owner.[7] *Id.* The city employee tried to tell plaintiff that he was handling the situation, but plaintiff continued to engage in a verbal altercation that escalated until the individual crumbled plaintiff's business card and threw it back at him. *Id.* The individual later initiated a second altercation with plaintiff that lasted five to ten minutes. *Id.* Mann investigated the incident and sent a summary to his colleagues via email. *Id.* Ultimately, plaintiff's managers determined his behavior at the event violated the terms of the performance improvement and Peterson called the event the "determining factor" in plaintiff's termination. Peterson Dep. at 145.

## II. Plaintiff's Allegations of Discrimination, Harassment, and Retaliation

Plaintiff asserts he was subject to harassment and inappropriate comments when Quinonez was his manager. Specifically, Quinonez would lash out at him, call him names like "chicken little," "Chef Boyardee," and "old man," make jokes about plaintiff, and imitate plaintiff as an overweight individual. Pl. Dep. at 166; Peterson Dep., Ex. 1; Dkt. No. 34-1, Ex. G ("Boyd Decl.") at 13. During the Covid pandemic, Quinonez made plaintiff pay for company-issued masks, but not other employees. Pl. Dep. at 166; Peterson Dep., Ex. 1. Plaintiff reported the issues to Peterson on March 22, 2021; Peterson was unable to substantiate them but provided "verbal counseling and coaching" to Quinonez. Pl. Dep. at 166; Peterson Dep. at 21, 101; Dkt. No. 33-3 ("Peterson Decl.") ¶ 3. Boyd also met with plaintiff to hear his concerns in April 2021. Boyd Decl. at 12. After Boyd left the company, plaintiff called Peterson again to ask about next steps and, according to plaintiff, Peterson told him that "HR is not your advocate, and so you're on your own."[8] Pl. Dep. at 167.

During his tenure, plaintiff also raised concerns about two additional company practices. On

---

plans and said to him "they're not letting me do this" because they were moving the event around the corner to a narrower street. Pl. Dep. at 129.

[7] It is unclear from the record whether the original interaction was with the business owner or the business owner's father.

[8] Peterson apparently testified that she did not make this statement, but the relevant portion of her deposition was not attached to the parties' briefing. *See* Reply at 6 (citing Peterson Dep. at 82).

February 10, 2022, DiVincenzo emailed general managers asking them to reach out to customers in their divisions where the company missed multiple pickups. DiVincenzo Dep., Ex. 5. DiVincenzo instructed that operations staff should provide the customers their phone numbers so that customers will call them and not the customer complaint call center. *Id.* That way, he explained, "if anything goes wrong in February (and beyond), we can stay super close to those customers to ensure service is properly handled . . . ." *Id.* A division manager then instructed staff in plaintiff's division to follow up with individual customers "to alleviate direct contact to anyone else but us at this time . . . ." Peterson Dep., Ex. 6. On March 2, 2022, plaintiff reported this instruction via the company's ethics complaint channel, writing, "everybody who has reviewed it says it is clearly an attempt to manipulate the Division's [missed pickup] numbers." *Id.* The complaint was funneled to Peterson, who determined the underlying motivation was to resolve repeat issues, not manipulate statistics. Peterson Dep. at 91-92. The ethics team agreed and Peterson communicated this finding back to plaintiff. *Id.* at 92.

The company also faced a consistent safety issue with its trucks exceeding weight limits established by the City of Salinas. DiVincenzo Dep. at 62. The city attempted to enforce liquidated damages against the company for these violations at least once. *Id.* at 65. Plaintiff raised concerns and advocated for addressing the issue. *Id.* at 64. Wallace admitted he was justified in doing so. Wallace Dep. at 50.

Finally, plaintiff contends that, in August 2022, Wallace relayed a directive from corporate vice president Richard Coupland to "hire employees that are younger and smarter." Opp'n at 7; Pl. Dep. at 101. Plaintiff also testified that Wallace and DiVincenzo told him they wanted to get "younger and smarter" in January 2023. Pl. Dep. at 112. Wallace denied hearing Coupland use the words "younger and smarter" and denied relaying these words to plaintiff. Wallace Dep. at 155-56.

At the time of plaintiff's termination, Mann was fifty-eight, Wallace was forty-one or forty-two, Peterson was forty-six, and DiVincenzo was forty. Wallace Dep. at 35; Peterson Decl. ¶¶ 4-5; DiVincenzo Dep. at 46. Urquidez was thirty-nine years old and twenty-five years younger than plaintiff when she replaced plaintiff in the sales manager role. Urquidez Dep. at 6; Dkt. No. 34-2 ¶ 2. The company paid Urquidez about $25,000 less than it had paid plaintiff for the same role.

7

DiVincenzo Dep. at 116.

### III. Procedural History

Plaintiff filed this lawsuit in the Monterey County Superior Court on October 5, 2023. Dkt. No. 1-2. Plaintiff asserts five claims: (1) age discrimination in violation of the California Fair Employment and Housing Act (FEHA); (2) harassment on the basis of age in violation of FEHA; (3) retaliation for reporting harassment in violation of FEHA; (4) a failure to prevent discrimination, harassment, and retaliation in violation of FEHA; and (5) retaliation in violation of California Labor Code section 1102.5(b). *Id.* Defendant timely removed the litigation to this Court on the basis of diversity jurisdiction. Dkt. No. 1.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most

favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

# DISCUSSION

## I. FEHA Age Discrimination

FEHA prohibits discrimination against employees on the basis of age. Cal. Gov't Code § 12940(a). To evaluate FEHA disparate treatment discrimination claims that lack direct evidence of discrimination,[9] California courts have adopted the three-part *McDonnell Douglas* burden shifting framework established in Federal anti-discrimination law. *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1113 (Cal. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). At trial, this means that if the plaintiff establishes a prima facie case of discrimination, the defendant may offer a legitimate, non-discriminatory reason for its action, and then the plaintiff may show that the defendant's reason is pretextual or offer other evidence of discrimination. *Id.* at 1113-14. The plaintiff retains the ultimate burden of persuading the fact-finder that discrimination occurred. *Id.* at 1114.

When an employer seeks summary judgment, the burdens shift. *Zamora v. Sec. Indus. Specialists, Inc.*, 285 Cal. Rptr. 3d 809, 830 (Cal. Ct. App. 2021). First, the employer must show that either the plaintiff lacks a prima facie case or the employer's adverse action was based on legitimate, non-discriminatory reasons. *Id.* The plaintiff must then "produce[] admissible evidence which raises a triable issue of fact material to the defendant's showing." *Id.* (internal quotation

---

[9] Plaintiff briefly argues there is direct evidence of discrimination. Opp'n at 18-19. Since the Court finds that plaintiff survives summary judgment under the burden-shifting framework for indirect evidence of discrimination, the Court declines to address this argument.

1  marks, emphasis, and citation omitted). If the plaintiff has presented a prima facie case, "an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *Guz*, 8 P.3d at 1117. Courts will examine "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Zamora*, 285 Cal. Rptr. 3d at 830.

Here, defendant argues that plaintiff lacks a valid prima facie case and that it terminated plaintiff's employment for a legitimate reason, namely poor work performance. Mot. at 13-17. As explained below, the Court holds that the presented evidence shows genuine disputes exist in both respects and defendant is not entitled to judgment as a matter of law. The Court therefore DENIES summary judgment on plaintiff's age discrimination claim.

### A.     Plaintiff's Prima Facie Case

For a FEHA age discrimination claim, plaintiff "must show he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017) (internal quotation marks and citation omitted). Defendant contends that plaintiff was not performing satisfactorily and that he cannot point to evidence suggesting a discriminatory motive. Mot. at 13-15. Each contention fails at summary judgment.

Plaintiff has produced sufficient evidence to raise a genuine dispute about the adequacy of his job performance. For the four years prior to his termination, plaintiff received largely positive performance reviews. Dkt. No. 34-2, Exs. A-D. In 2023, before his termination, plaintiff had secured rate increases with Fresno County and Salinas. Pl. Dep. at 100; Mann Dep. at 19-20; Wallace Dep. at 43-44. The former Salinas city manager praised plaintiff's relationships with city staff. Carrigan Decl. ¶¶ 4-6. Plaintiff's own deposition testimony rebuts several of defendants' specific concerns. Pl. Dep. at 88-101. Notwithstanding testimony from defendant's representatives about plaintiff's deficiencies, a reasonable juror could conclude plaintiff performed adequately.

10

1    Defendant's argument that plaintiff cannot point to evidence suggesting discriminatory
2    motive also falls short. For his prima facie case, plaintiff may simply show that he was "replaced
3    by [a] substantially younger employee[]." *Merrick*, 867 F.3d at 1146. In this case, plaintiff's
4    replacement was twenty-five years younger than plaintiff and was paid $25,000 less for the same
5    role. Urquidez Dep. at 6; Dkt. No. 34-2 ¶ 2; DiVincenzo Dep. at 116. Plaintiff may also point to
6    evidence raising an inference of discrimination, including the alleged directive from the corporate
7    office to get "younger and smarter." Pl. Dep. at 101. Defendant may dispute whether this statement
8    was actually made, but at summary judgment the Court interprets the evidence in a light favorable
9    to the non-movant.[10] *See Anderson*, 477 U.S. at 255.

In sum, defendant fails to show, as a matter of law, that plaintiff has not presented a prima facie case of age discrimination.

### B.   Legitimate, Non-Discriminatory Reason Or Pretext?

Defendant insists it terminated plaintiff's employment for poor performance, but defendant does not meet its burden to show "the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." *See Guz*, 8 P.3d at 1117. Plaintiff presents a narrative along the following lines. *See* Opp'n at 20-21. He received positive performance reviews and secured key rate increases for the company, but he was open when his managers suggested in early 2023 that he transition to a liaison role. Once it became clear the liaison role would not materialize, his managers swiftly laid the groundwork for his termination as part of a broader company goal to get "younger and smarter." They moved him to the lowest rating on a mid-year performance review, a stark contrast to his positive annual review three months earlier. They asked him to retire and, when he refused, they placed him on a forty-five-day performance improvement plan with vague goals. On day forty-five, they fired him without any further discussion, citing only one incident of allegedly unprofessional conduct that occurred during the

---

[10] Defendant contends that plaintiff's "uncorroborated and self-serving testimony" is not sufficient to raise a dispute of material fact, *see* Dkt. No. 36 ("Reply") at 1, but questions of credibility are reserved for the jury, not the Court.

11

1  improvement period. They then replaced him with a much younger coworker.

2  Considering this narrative, supported in all parts by at least some evidence, a rational juror
3  could find that defendant's stated motives were a pretext to cover discriminatory intent. The Court
4  acknowledges that defendant disputes the factual underpinnings of many of these conclusions, but
5  these disputes of fact support a conclusion that summary judgment be denied, not granted.

### II. FEHA Harassment

FEHA prohibits employers from harassing their employees or knowingly allowing others to do so. Cal. Gov't Code § 12940(j). To state a successful harassment claim, a plaintiff must show that "(1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 980 P.2d 846, 851 (Cal. 1999)). Courts look to the totality of the circumstances to determine whether harassment is severe or pervasive enough to alter the workplace environment. *Bailey v. San Francisco Dist. Attorney's Off.*, 552 P.3d 433, 444 (Cal. 2024); Cal. Gov't Code § 12923(c). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." *Bailey*, 552 P.3d at 444 (internal quotation marks and citation omitted).

Plaintiff defends his harassment claim by pointing to "the repeated calling of Plaintiff an 'old man' by Quinonez, the 'younger and smarter' comment by Wallace, and the demand he retire by Wallace and Mann." Opp'n at 22. Indeed, Quinonez supervised plaintiff from early 2020 through early 2022 and would call him various belittling names like "chicken little," "Chef Boyardee," and, on two occasions, "old man." Pl. Dep. at 166; Peterson Dep., Ex. 1; Dkt. No. 34-1, Boyd Decl. at 13. If found true,[11] this conduct could be considered harassment in a layperson's understanding of the term, but it is not unlawful severe or pervasive harassment on account of

---

[11] The Court notes Peterson's investigation determined plaintiff's complaint about Quinonez was unsubstantiated. Peterson Dep. at 22, 26.

1  plaintiff's age.  Alongside plaintiff's appearance and work temperament, age was only one of many
2  characteristics that Quinonez targeted with his meanspirited teasing.  Nor was plaintiff the only
3  employee targeted by Quinonez before the manager left the company.  (*See* Peterson Dep., Ex. 1
4  [describing Quinonez's attempts to isolate another employee so that she would quit].)

5        While the isolated use of an offensive racial epithet may constitute harassment under FEHA,
6  *Bailey*, 552 P.3d at 448, the Court finds that being called "old man" twice does not create an
7  objectively hostile working environment.  *See Brodish v. New Elec. Fresno, LLC*, No.
8  221CV02945RGKADS, 2021 WL 3914259, at *3 (C.D. Cal. July 13, 2021) ["The Court agrees that
9  being called 'old man' or 'old fogey' similarly does not carry significant derogatory weight for
10 harassment."]; *see also Tyburski v. City of Chicago*, 964 F.3d 590, 602 (7th Cir. 2020) ["Even insults
11 specifically referencing age do not necessarily rise to the level of actionable harassment."].  Nor do
12 comments from management about hiring younger employees.  *See Saqqa v. San Joaquin Cnty.*,
13 No. 2:20-CV-00331 WBS AC, 2021 WL 4123841, at *12 (E.D. Cal. Sept. 9, 2021), *aff'd sub nom.*
14 *Saqqa v. Cnty. of San Joaquin*, No. 21-16617, 2022 WL 17817445 (9th Cir. Dec. 20, 2022) [holding
15 remarks about needing to replace older managers with younger ones "not severe or humiliating
16 enough" to constitute unlawful harassment].

17       Thus, even though the California Legislature has declared that "[h]arassment cases are rarely
18 appropriate for disposition on summary judgment," the Court considers judgment as a matter of law
19 to be appropriate in this instance.  *See* Cal. Gov't Code § 12923(e).  The Court GRANTS defendant's
20 motion for summary judgment on plaintiff's harassment claim.

21

22 **III.    FEHA Retaliation**

23       FEHA prohibits retaliation against employees who have opposed practices prohibited by
24 FEHA.  Cal. Gov't Code § 12940(h).  To prevail on a retaliation claim, a plaintiff must establish
25 "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the
26 protected activity and the adverse employment action."  *Cornwell v. Electra Cent. Credit Union*,
27 439 F.3d 1018, 1034-35 (9th Cir. 2006).  Temporal proximity between the protected activity and
28 the adverse action may be circumstantial evidence of a causal link between the two.  *Id.* at 1035.

13

1  Plaintiff argues that his complaints about Quinonez's "old man" comments contributed to his
2  termination because "[t]he common thread is Ms. Peterson," who "remained an active participant
3  throughout the next two years in a protracted campaign to push Plaintiff out." Opp'n at 22.

4  Even with a favorable interpretation of the evidence, plaintiff cannot withstand summary
5  judgment on this claim. Plaintiff submitted his complaint about Quinonez on March 22, 2021.
6  Peterson Dep. at 21. Plaintiff was terminated on June 30, 2023. Mot. at 12; Opp'n at 1; Wallace
7  Dep. at 107. In *Cornwell*, the Ninth Circuit affirmed that a seven-month gap between a complaint
8  and termination was too long to support an inference of retaliation. 439 F.3d at 1035. Here, the
9  passage of time was longer than two years. Plaintiff's description of a "protracted campaign"
10 against him orchestrated by Peterson reads too much into the record. Put simply, plaintiff cannot
11 prove a causal link between his 2021 complaint against Quinonez and his 2023 termination. His
12 retaliation claim fails as a matter of law and the Court GRANTS defendant's request for summary
13 judgment on this claim.

### IV. FEHA Failure to Prevent Discrimination, Harassment and Retaliation

Under FEHA, an employer also may not "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "To prove a failure-to-prevent claim, Plaintiff must establish: (1) Plaintiff was subjected to discrimination, harassment, or retaliation; (2) Defendant failed to take all reasonable steps to prevent discrimination, harassment, or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm." *Moss v. City & Cnty. of San Francisco*, 714 F. Supp. 3d 1167, 1185 (N.D. Cal. 2024) (internal quotation marks and citations omitted). Termination is an injury that satisfies the third prong. *Id.*

A failure-to-prevent claim is "essentially derivative" of the underlying discrimination, harassment, or retaliation claim. *Id.* (quoting *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015)). As such, the Court DENIES defendant's request for summary judgment on a failure to prevent discrimination, but GRANTS summary judgment on a failure to prevent harassment or retaliation.

### V. Whistleblower Retaliation, California Labor Code Section 1102.5(b)

California law also prohibits retaliatory actions against employees who have disclosed or may disclose information to a government agency about what the employee has "reasonable cause to believe" to be a regulatory or statutory violation by the employer. Cal. Lab. Code § 1102.5(b). If the employee's reporting is proven to be a contributing factor, the employer must demonstrate by clear and convincing evidence that the adverse action would have been taken regardless. *Id.*, § 1102.6. Similar to FEHA retaliation, the elements of a whistleblower retaliation claim under this statute are (1) a protected activity, (2) an adverse action, and (3) a causal link between the two. *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 575 (9th Cir. 2022) (citing *St. Myers v. Dignity Health*, 257 Cal. Rptr. 3d 341, 352 (Cal. Ct. App. 2019)).

Defendant argues that plaintiff made no whistleblowing complaints and that he was terminated for reasons independent from any complaints. Mot. at 23-24. Plaintiff responds that when he reported the plan to divert missed pickup calls from the customer call center to operations staff, he had reasonable cause to believe he was reporting a scheme to defraud a public entity client.[12] Opp'n at 23. Additionally, plaintiff considers his attempts to rectify the problem of overweight trucks on Salinas roads as protected activity under section 1102.5. *Id.* To establish a causal link, plaintiff points to language in his performance improvement plan that stated, "you tend to exaggerate problems and create unnecessary alarm or chaos, creating a culture of anxiety or fear." Pl. Dep., Ex. 10. Interpreting the evidence in a light favorable to plaintiff, the Court cannot say that no reasonable juror would find retaliation under these circumstances. Accordingly, the Court DENIES summary judgment on this claim.

### VI. Punitive Damages

Defendant's final request is for summary judgment denying plaintiff access to punitive damages. Mot. at 25. Punitive damages may be available for violations of FEHA and the

---

[12] While not crystal clear to the Court, the evidentiary record suggests that defendant received contract bonuses if the number of reported missed pickups was kept below a certain threshold. Peterson Dep. at 91.

whistleblower statute. *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1142 (N.D. Cal. 2016); *Mathews v. Happy Valley Conf. Ctr., Inc.*, 256 Cal. Rptr. 3d 497, 524 (Cal. Ct. App. 2019). The general rule allows punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). If a reasonable jury could not find from the evidence clear and convincing proof of oppression, fraud, or malice, summary judgment rejecting punitive damages is appropriate. *Butte Fire Cases*, 235 Cal. Rptr. 3d 228, 235 (Cal. Ct. App. 2018), *as modified on denial of reh'g* (July 26, 2018).

For a corporate employer defendant, punitive damages are available when an "officer, director, or managing agent" acted with oppression, malice, or fraud or authorized or ratified such action. Cal. Civ. Code § 3294(b). A "managing agent" is "someone who exercises substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 981 P.2d 944, 951 (Cal. 1999). The question of who qualifies as a managing agent is a question of fact sometimes inappropriate for summary adjudication. *See DesRosiers v. Hartford*, 979 F. Supp. 2d 1036, 1053 (E.D. Cal. 2013) (citing *White*, 981 P.2d at 947). Notably, defendant does not argue that the actions here were not committed by managing agents. To the contrary, defendant writes, "Management at the highest levels met with Plaintiff to discuss his behavior . . . ." Mot. at 25. The Court therefore does not grant summary judgment for defendant based on a lack of involvement of a managing agent.

The Court must then evaluate whether a reasonable jury could find that defendant, through its agents, acted with oppression, malice, or fraud. The statute defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.*, § 3294(c)(2). Fraud consists of "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.*, § 3294(c)(3). A wrongful termination, absent unlawful discrimination, has been found insufficient to support an award for punitive damages. *Scott v.*

*Phoenix Sch., Inc.*, 96 Cal. Rptr. 3d 159, 171 (Cal. Ct. App. 2009). But other courts have upheld jury awards of punitive damages in cases of unlawful gender or age discrimination. *See Cloud v. Casey*, 90 Cal. Rptr. 2d 757, 768 (Cal. Ct. App. 1999); *Stephens v. Coldwell Banker Com. Grp., Inc.*, 245 Cal. Rptr. 606, 612 (Cal. Ct. App. 1988), *disapproved of on other grounds by White*, 981 P.2d 944; *see also Kelly v. Wal Mart Stores, Inc.*, 291 F. Supp. 3d 1145, 1154 (S.D. Cal. 2017) (denying summary judgment on punitive damages in a FEHA claim). Just as a jury is best suited to determine whether defendant discriminated or retaliated against plaintiff, a jury is also best suited to determine whether such actions were so oppressive, malicious, or fraudulent as to warrant punitive damages. The Court thus DENIES summary judgment on this issue.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendant's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: January 31, 2025

SUSAN ILLSTON
United States District Judge